2024 IL App (2d) 240277-U
No. 2-24-0277
Order filed July 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-637 |
| MARK A. PARYZ, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in denying defendant pretrial release, where defendant was charged with aggravated battery against his elderly mother and violating an order of protection as to her.  Affirmed.

¶ 2   Defendant, Mark A. Paryz, timely appeals from the denial of his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act (Act).  See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A.

101-652); *Rowe v. Raoul*, 2023 IL 129248 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                            I. BACKGROUND

¶ 4      On March 28, 2024, the State charged defendant with aggravated battery to a victim 60 years or older (720 ILCS 5/12-3.05(d)(1) (West 2022) (Class 3)), aggravated battery to a handicapped person (*id.* § 12-3.05(d)(2) (Class 3)), domestic battery – physical contact (*id.* § 12-3.2(a)(2) (Class A)), and violation of an order of protection (*id.* § 12-3.4(a)(1) (Class A)). On the same day, the State filed a verified petition to deny defendant pretrial release, alleging that he was charged with violating an order of protection and that his pretrial release posed a real and present threat to the safety of any person or the community (725 ILCS 5/110-6.1(a)(3) (West 2022)), defendant was charged with domestic battery and his pretrial release posed a threat to the safety of any person or the community (*id.* § 110-6.1(a)(4)), and additional grounds for the denial of his release included his criminal history, which included aggravated driving under the influence (DUI)/great bodily harm (15-CF-438) (Class 4) for which he was unsatisfactorily terminated from probation on April 25, 2019, and pending charges in a 2021 case (21-CF-1879) (theft – Class 2; domestic battery/bodily harm – Class A; domestic battery/insulting/provoking contact – Class A).

¶ 5      At the hearing on the State's petition, the State presented the police synopsis in the present case, which was verified under oath and related as follows. Defendant, who resides at 1015 Symphony Drive in Aurora, violated an order of protection on March 26, 2024, when he "violated remedies R01 (no physical abuse or interference with physical liberty), R02 (prohibited from entering or remaining at the residence of a protected person)," of which his mother, Polly L. Paryz was a listed protected party. Polly is 70 years old, is paralyzed from the waist down, and resides at 323 Rosewood Avenue, Apartment 6, in Aurora, the location of the alleged offenses and where

defendant was arrested. The synopsis further related that, on March 23, 2024, defendant struck Polly in the face several times with a closed fist, causing visible bruising (R01), and remained in her apartment (R02). Defendant was transported to the hospital for a mental health evaluation based on suicidal statements.

¶ 6 The State also presented the verified police synopsis in case No. 21-CF-1879, which related that, on October 23, 2021, at 2 p.m., police responded to 1510 Hartsburg Lane in North Aurora for a motor vehicle theft. Defendant's sister, Kathryn Roman, had called on Polly's behalf, who was on bed rest. Roman reported that she had returned home with Polly from a care facility to find that the garage door was damaged and a metal door between the garage and the house had been kicked in. Defendant resided with Polly at this time and was present when Polly and Roman arrived home. When Roman asked defendant where the vehicle was, he became enraged and pushed Roman against a wall and to the ground. He then returned to his room. The officer spoke to defendant, and defendant asserted that the damage to the doors had been caused by his drug dealer on October 19, 2021, although he was unsure of the day. His dealer arrived to collect money that defendant owed him. Defendant gave the dealer the following items that belonged to Polly: keys to Polly's vehicle, a camera, a television, and gold jewelry. Defendant stated that he gave the dealer the items as collateral for unpaid drugs and that Polly did not give him permission to give the items to the dealer.

¶ 7 At the hearing on the State's petition in this case that same day, the State noted defendant's criminal history and the fact that he was currently on pretrial release in case No. 21-CF-1789. It noted that, in case No. 15-CF-438, defendant had pleaded guilty to an aggravated DUI resulting in great bodily harm and that his probation was terminated unsatisfactorily on April 25, 2019. He also had 2014 and 2005 DUIs, and his driver's license was revoked. Addressing the commission

of detainable offenses (*i.e.*, domestic battery and violation of the order of protection), the State proffered the police synopsis, noting that it related that Polly told the officers that defendant struck her in the face, causing visible injury, and he remained in the apartment. The State also noted the order of protection in case No. 21-CF-1879, of which Polly is one of the named parties. Addressing dangerousness, the State noted that the complaining witness is defendant's mother, he struck his mother and left visible bruises, she is paralyzed and cannot defend herself, and defendant has a pending domestic battery charge. The State asserted that GPS/electronic home monitoring (EHM) would not ensure Polly's, Roman's, or the public's safety.

¶ 8     Defense counsel proffered that defendant lived in Kane County most of his life and had previously been employed as an industrial painter. Currently, he is not working due to the loss of two fingers after a spider bite. Addressing the police synopsis in this case, counsel argued that it contained conclusory statements and did not identify who made the allegations. Counsel also proffered that it was his "understanding" that Polly would not be residing at the residence, because she had recently fallen in the home, was in the hospital, and "they are seeking for her to reside in" a nursing home; thus, defendant would not be having contact with his mother. (In its rebuttal, the State argued that there was no evidence that Polly would not return to her home.) Counsel also argued that the alleged act was a one-time occurrence and that defendant had no history of violating an order of protection between the prior case and the present case. Thus, there is no pattern or history of violence toward Polly, and the prior case involved his sister.

¶ 9     The trial court granted the State's petition. Noting that the alleged victim is the defendant's mother, can testify about the attack, and was treated for injuries, the court found that the State met its burden to show that the proof was evident or the presumption great that defendant committed a detainable offense. Finding that defendant poses a threat in that he lives with his mother, who is

over 60 and has physical issues, and she would be endangered when she returned home, the court determined that he posed a real and present threat to the safety of any person or the community. (It noted it did not necessarily find credible that she would not return home.) Finally, the court found that no condition or combination thereof could mitigate the threat defendant posed to the safety of his mother, who is wheelchair-bound and has no other place to live, and he has a criminal history (aggravated DUI, probation sentence, and unsatisfactory termination of probation). Thus, no condition would mitigate his dangerousness.

¶ 10    On April 10, 2024, defendant filed a notice of appeal, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). The Office of the State Appellate Defender declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), and defendant stands on his notice of appeal. The State submitted a memorandum opposing defendant's appeal.

¶ 11                                II. ANALYSIS

¶ 12    Defendant argues that the trial court erred in granting the State's petition. Specifically, he contends that the State did not meet its burden of showing that: (1) the proof is evident or the presumption great that he committed the charged offenses, where the police synopsis in this case is not reliable because it does not note how the officer learned of the information, the facts are all conclusory, and the officer was not on the scene and, thus, did not have personal knowledge of the allegations; (2) defendant posed a threat to other persons or the community, where his criminal history is "mostly" nonviolent alcohol/drug-related and driving violations, no evidence showed he was violent toward the victim in the past, he has no convictions, and there was no evidence of prolonged ongoing abusive behavior; and (3) no condition or combination thereof could mitigate any threat defendant posed, where the court did not find that defendant could not reside elsewhere

or that EHM/GPS would not adequately protect the alleged victim, a stay away or no-contact order could have been issued, and the alleged victim would no longer be residing at the address due to hospitalization and anticipated housing in a nursing home. Further, defendant argues that the trial court erred in determining that the victim was treated for her injuries, where the synopsis merely states that *defendant* was transported to the hospital and defense counsel proffered that the victim was taken to the hospital *after* this incident due to a fall in the home.

¶ 13     Pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 14     We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of

discretion occurs when the court's decision is unreasonable. *Id.* Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable. *Id*.

¶ 15 We conclude that the trial court did not err in determining that the proof is evident or the presumption great that defendant committed detainable offenses. The police synopsis related that defendant violated an order of protection of which his elderly and paralyzed mother is a protected party when he struck her in the face several times with a closed fist, causing visible bruising, and then remained in her apartment. We reject defendant's argument that the synopsis in this case, which was verified under oath by the police officer, is conclusory and insufficient because it does not identify who made the allegations. This court has repeatedly held that a police synopsis alone may be sufficient to sustain the State's burden. See *People v. Gomez*, 2024 IL App (2d) 240082-U, ¶ 16 (citing *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 24; *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24). Further, to the extent defendant's argument attacks the officer's credibility, we also reject it. See *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44 ("We will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses."); see also *Inman*, 2023 IL App (4th) 230864, ¶ 11 (applying *Vega* in a pretrial-release context).

¶ 16 We also conclude that the trial court did not err in assessing defendant's dangerousness. Defendant's focus on his "mostly" nonviolent alcohol/drug-related and driving violations and lack of evidence that he was violent toward the victim in the past or committed prolonged ongoing abusive behavior is not well taken. As related in the police synopsis in case No. 21-CF-1789, defendant allegedly committed domestic battery against his sister while residing with his elderly mother. This reasonably supports a finding of dangerousness. Further, as the State noted, defendant pleaded guilty to an aggravated DUI that resulted in great bodily harm and received

probation that was terminated unsatisfactorily in 2019. Most significantly, in the present case, he allegedly struck his elderly wheelchair-bound mother in the face, causing visible injury, and remained in her apartment. The trial court's finding that defendant poses a real and present threat to the safety of any person or the community was reasonable.

¶ 17 We also conclude that the trial court did not err in finding that no condition or combination thereof can mitigate the threat defendant poses. The State argued that GPS/EHM would not ensure Polly's or the public's safety. The trial court noted that Polly is wheelchair-bound and has no other place to live and that defendant has a criminal history, including aggravated DUI, for which he received probation and was unsatisfactorily terminated therefrom. Further, Polly had an order of protection against defendant that he allegedly violated during the attack in this case. These circumstances reasonably demonstrate, as the State argues, a history of violating court orders. 725 ILCS 5/110-5(a)(6)(D) (West 2022); see *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 14 (citing *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33 (where the defendant was on parole from a gun case and failed to comply with the conditions placed upon him, this "demonstrated history of refusing to abide by conditions of release" satisfied the State's burden of showing no less restrictive conditions were appropriate and the trial court did no err in so finding); *People v. Davis*, 2023 IL App (1st) 231856, ¶¶ 31-32 (State's burden of showing no less restrictive conditions were appropriate was satisfied, where the defendant's history, including a prior conviction for escape from law enforcement, demonstrated an unwillingness to follow rules and that he would not likely follow the court's order, rendering futile a release with conditions)).

¶ 18 Finally, we reject defendant's argument that the trial court's ruling was erroneous because it found that Polly was treated for her injuries, where the synopsis merely related that defendant was transported to the hospital and Polly, as proffered by defense counsel, fell in the home after

this incident. To the extent this finding was erroneous, it does not undermine or render an abuse of discretion the court's ultimate denial of pretrial release.

¶ 19                                    III. CONCLUSION

¶ 20    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 21    Affirmed.